**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALEXANDRA DAVIS,** | |
| **Plaintiff,** | |
| **vs.** | **Civil Action No. 1:21-cv-07639** |
| **TREND MANAGEMENT, LLC AND INFLUENCER NARRATIVE, LLC,** | |
| **Defendants.** | |

## PLAINTIFF'S COMPLAINT

Alexandra Davis ("Plaintiff") files this Complaint ("Complaint") against Trend Management, LLC ("Trend") and Influencer Narrative, LLC ("Influencer Narrative") (Trend and Influencer Narrative are collectively "Company" or "Defendants") and shows:

## STATEMENT OF THE CASE

Defendants learned that Ms. Davis—who resigned after unfair treatment while working for Defendants—seeks to work in-house with just one of Defendants' *former* clients. Defendants reacted by seeking to intimidate Ms. Davis. They seek to enforce an overly broad and unenforceable noncompetition agreement. As just two examples, that agreement (a) has no geographic restriction and (b) seeks, for two years, to restrain Plaintiff from working in *any* capacity across the only industry that she has been working. Additionally, Defendants assert that Plaintiff is prohibited from even *communicating* with "related business owners, partners, members, officers, or agents."

Plaintiff Davis asks the Court to declare the noncompetition covenant unenforceable. Plaintiff can then begin earning a living by working with one of Defendants' former clients.

## THE PARTIES

1.     Plaintiff is an individual and a citizen of the state of New York. She resides in New York City, New York.

2.     Defendant Trend Management, LLC ("Trend") is a limited liability company registered to do business in Texas. Trend's registered agent is Ted Raad at 3505 Sage Road, Unit 1801, Houston, Texas 77056.

3.     Defendant Influencer Narrative, LLC ("Influencer Narrative") is a limited liability company registered to do business in Texas. Influencer Narrative's registered agent is Ted Raad at 3505 Sage Road, Unit 1801, Houston, Texas 77056.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this Declaratory Judgment action pursuant to the Federal Declaratory Judgment Act, Title 28 U.S.C. §§ 2201(a) and 2202, as well as under Title 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has jurisdiction pursuant to Title 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     This Court has personal jurisdiction over Defendants because, upon information and belief, the subject matter of this litigation arises from Defendants' contacts with this forum including, but not limited to, the Agreement, which was entered into in New York and seeks to apply New York law.

7.     Venue is proper in this district under Title 28 U.S.C. § 1391.

## FACTS

8.     In March 2020, Ms. Davis was hired by Influencer Narrative as a Talent Manager. She then signed an "Employment Contract Agreement" ("Agreement"). Ex. A. Influencer Narrative had been formed less than a year earlier to provide services, including representing social media influencers.

2

9.      Ms. Davis provided excellent services for the Influencer Narrative, which grew and expanded. At some point, Influencer Narrative asserts that it became Trend. Ex. B.

10.     Ms. Davis continued working for Company but began facing continued and increasing concerns, including and not limited to problems with the attitude of male leadership and an overwhelming workload. Also, throughout her employment, her commissions were not timely paid. Under the Agreement, her commissions were to "be paid quarterly." However, her commissions were often months late and only paid after she made frequent inquiries about the untimely commission payments. And, after Ms. Davis inquired about the delay of a co-worker's unpaid bonus, Trend responded in a manner that made Ms. Davis feel extremely uncomfortable and shaken.

11.     In July 2021, she resigned. At that time, the Company did not provide a copy of the Agreement.

12.     Over a month later, Ms. Davis was contacted by a *former* client of the Company. Ms. Davis then contacted the Company to let them know that Ms. Davis intended to work with that former client. Ex. B.

13.     The Company responded by claiming the Agreement:

  a.  prohibits Ms. Davis from *communicating about any professional relationship* with Company's former clients.
  b.  prohibits Ms. Davis from *any* work in the *entire industry* of "social media talent management";
  c.  includes a noncompetition covenant that is "not limited" and also prohibits Ms. Davis from "engaging, directly or indirectly, in the industry of" Influencer Narrative;
  d.  was entered with Influencer Narrative but enforceable by Trend. Ex. B

14.     The Company's response did not mention that the Agreement:

  a.  does not include a geographic limitation to the noncompetition covenant;
  b.  does not include a successor provision;
  c.  includes a provision that claims an ability to violate federal disability law; Ex. A at § XV (*e.g.,* attempting to void legal requirement to engage in interactive process).

15.     The Contract's "Non-Compete" section states:

**XII. Non-Compete**. During the term of employment, the Employee understands that he or she will be subject to learning proprietary information, including trade secrets, that could be applied to competitors of the employer. Therefore, in order to protect the fiduciary interests of the Employer, the Employee agrees to the following:

**-Industry(ies).** To withhold from working in the following industry(ies): related to social media talent management, unless approved.

**-Competitor(s).** To withhold from working for the following competitor(s): related to social media talent management, unless approved.

**-Term.** This Non-Compete shall be in effect for 2 year(s) following the date of Employee's termination.

**-Related Acts.** In addition, this Section shall be applied specifically to the Employee engaging, directly or indirectly, in the industry of the Employer. This includes but is not limited to: Communicating with related business owners, partners, members, officers, or agents; Being employed by or consulting any related business; Being self-employed in a related business; or Soliciting any customer, client, affiliate, vendor, or any other relationship of the Employer.

Ex. A.

16.     Defendants cannot deny that the covenant lacks an enforceable covenant's most basic requirements including and not limited to:

    a.  geographic limitation,
    b.  a limitation not greater than required to protect an employer's legitimate interest, and
    c.  not imposing an undue hardship on Ms. Davis.

17.     Defendants' unclean hands further warrant precluding any enforcement.

18.     Additionally, Ms. Davis seeks solely to work with one of Defendants' former clients. Such work would not have anything to do with Defendants' confidential information, which Ms. Davis does not possess. Ms. Davis has neither sought nor indicated any other activity. Thus, there is no legitimate business interest that Defendants seek to protect – and certainly not without undue hardship to Ms. Davis.

## **DECLARATORY JUDGMENT**

19.     Ms. Davis incorporates all prior allegations of this Complaint as if fully set forth herein.

20.     A live and justiciable controversy exists as to whether Ms. Davis remains bound by the post-employment obligations set forth in the Agreement

21.     Defendants contend that Ms. Davis is in breach of the Agreement.

22.     The post-employment restrictions set forth in Section XII of the Agreement violate New York law and are overbroad and not necessary to protect the legitimate business interests of Defendants under New York law and are, thus, void and unenforceable.

23.     In the alternative, any post-employment restrictions set forth in the Agreement are no longer valid and/or enforceable as a result of Defendants' acts and/or unclean hands.

24.     Defendants' attempt to enforce post-employment restrictions that are void or otherwise legally unenforceable restrict Ms. Davis from obtaining and/or continuing gainful employment and otherwise cause injury to Ms. Davis, including to reputation within the industry and ability to service clients – including and not limited to Defendants' former clients with whom she had relationships that predated Ms. Davis's employment with Defendants.

25.     Such injuries cannot be fully compensated by a monetary award and thus, absent injunctive relief, Ms. Davis is suffering and will continue to suffer irreparable harm.

26.     Ms. Davis seeks a Declaratory Judgment that the post- employment restrictions set forth in Section XII of the Agreement are void and unenforceable (a) under the law of New York and/or (b) because of Defendants' acts, unclean hands, or omissions.

27.     Ms. Davis seeks all available damages, remedies, interest, fees, and costs.

## **BREACH OF CONTRACT**

28.     Ms. Davis incorporates all prior allegations of this Complaint as if fully set forth herein.

29.     Under the Agreement, Company was required to pay Ms. Davis's commissions "quarterly." Ex. A at §IV. That quarterly payment did not occur.

30.     Instead, Company's payments were untimely and only paid after Ms. Davis was forced to make frequent inquires.

31.     Accordingly, Company breached the Agreement and Ms. Davis seeks all available damages, remedies, interest, fees, and costs.

## STATUTORY VIOLATION FOR UNTIMELY COMMISSION PAYMENTS

32.     Ms. Davis incorporates all prior allegations of this Complaint as if fully set forth herein. As an alternative to Plaintiff's Breach of Contract claim, she asserts that Defendants' failure to timely pay commissions was a violation of New York Labor Law. Specifically, Defendants violated N.Y. Lab. Law § 191(1)(c), which required payment to her of "commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned."

33.     Ms. Davis was not paid timely under the terms of the Agreement. Also or alternatively, she was not paid less frequently than once in each month and later than the last day of the month following the month in which they are earned.

34.     Accordingly, Company breached New Labor Law and Ms. Davis seeks all available damages, remedies, interest, fees, and costs.

## MISCELLANEOUS

35.     The right to plead any and all claims, causes of action and/or theories in the alternative is invoked and all claims, causes of action, and/or theories of recovery are hereby plead, in the alternative, to the extent necessary. The right to bring additional causes of action against and to amend this Action as necessary is hereby specifically reserved.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Ms. Davis requests that this Court enter Judgment in Plaintiff's favor and against Defendants as follows:

a. The post-employment restrictions set forth in Section XII of the Agreement violate New York law and/or are overbroad and not necessary to protect the legitimate business interests of Defendants under New York law and are, thus, void and unenforceable;

b. Alternatively, any post-employment restrictions set forth in the Agreement are no longer valid and/or enforceable as a result of Defendants' breach of obligations under that Agreement;

c. Defendants materially breached obligations under the Agreement and awarding damages in favor of Ms. Davis in an amount to be proven at trial;

d. Defendants violated the New York Labor Law and awarding damages in an amount to be proven at trial;

e. Award Ms. Davis's attorneys' fees and costs in this lawsuit; and

f. The Court enter an Order for such other and further relief to Ms. Davis as this Court deems just and proper.

Respectfully submitted,

**WALKER G. HARMAN, JR. (WH8044)**
harman@roggedunngroup.com

**ROGGE DUNN GROUP, PC**
500 N. Akard Street
Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF**