# EXHIBIT A

# EMPLOYMENT CONTRACT AGREEMENT

This employment agreement ("Agreement") is made and effective as of March 16 2020 by and between a business entity known as Influencer Narrative, LLC having its principal place of business at WeWork c/o Influencer Narrative, 2700 Post Oak Blvd, Houston, Texas, 77056 ("Employer") and Alexandra Davis with a mailing address of 535 E 78th St, Apt 3D, New York, New York, 10075 ("Employee").

WHEREAS the Employer intends to hire the Employee for the position of Talent Manager and the Employee desires to provide their services on the conditions set forth.

IN CONSIDERATION of promises and other good and valuable consideration the parties agree to the following:

**I. Employee Duties**. The Employee agrees that they will act in accordance with this Agreement and to the best interests of the Employer, which may or may not require them to present the best of their skills, experience, and talents, to perform all the duties required of the position. In carrying out the duties and responsibilities of their position, the Employee agrees to adhere to any and all policies, procedures, rules, and regulations as administered by the Employer. In addition, the Employee agrees to abide by all local, county, State, and Federal laws while employed by the Employer.

**II. Responsibilities**. The Employee shall be given the job title of Talent Manager ("Position") which shall involve conducting everyday tasks as needed by the Employer.

The Employer may also assign duties to the Employee from time to time by the Employer. The Employee shall be expected to work on a full-time basis with the Employee being required to work at least 40 hours in a standard week.

**III. Employment Period**. The Employer agrees to hire the Employee on an at-will basis which means this Agreement may be terminated at any time by either the Employee or Employer. After termination by any of the Parties, neither will have any obligation excluding severance as outlined in this Section, confidentiality as listed in Section XI and any non-compete as listed in Section XII.

**a.) Employee's Termination**. The Employee shall have the right to terminate this Agreement by providing at least 14 days' notice. If the Employee should terminate this Agreement, the Employer shall not have any further obligations to the Employee under this Agreement.

Page 1

**b.) Employer's Termination**. The Employer shall have the right to terminate this Agreement by providing at least 14 days' notice. If the Employee demonstrates gross misconduct or negligence, the Employer shall have the right to terminate this Agreement immediately. If the Employer should terminate this Agreement, the Employee shall not be entitled to severance.

**IV. Pay**. As compensation for the services provided, the Employee shall be paid $80,000.00 salary on an annual basis ("Compensation"). The Compensation is a gross amount that is subject to all local, State, Federal, and any other taxes and deductions as prescribed by law. Payment shall be distributed to the Employee on Semi-Monthly basis. Further the employee shall be paid a lump sum amount of $5,000 at the beginning of the Employee's contract ("Signing Bonus"). The Signing Bonus is a gross amount that is subject to all local, State, Federal, and any other taxes and deductions as prescribed by law. Furthermore, the Signing Bonus will be returned, at a prorated amount, to the Employer if the Employee does not maintain employed with the Employer for a minimum of 1 year.

**-Commissions**. The Employee shall be entitled to commissions from the Employer calculated as follows: The Employee shall be paid quarterly, on a graded tier fixed amount level, of all gross profit, calculated monthly, on Influencers the Employee is assigned as the Talent Manager with a maximum annual commission amount of $25,000.

| Monthly Gross Profit Tiers | Monthly Commission | Annualized Bonus |
|---|---|---|
| $20,000 – $29,999 | $500 | $6,000 |
| $30,000 – $69,999 | $1,000 | $12,000 |
| $70,000 + | $5,000 | $25,000 |

**V. Employee Benefits**. During the term of this Agreement, the Employee shall be eligible to participate in the following Benefits offered by the Employer: health insurance, and dental.

The aforementioned benefits may change at any time by the Employer.

**VI. Out-of-Pocket Expenses**. The Employer agrees to reimburse the Employee for expenses that are incurred while performing the duties of their position under this Agreement, with prior approval.

**VII. Trial Period**. There shall be no Trial Period or any such period of time where the Employee shall be prohibited from Benefits, Vacation Time, Personal Leave, or any other leave that is paid or unpaid in this Agreement.

**VIII. Vacation Time**. After the Trial Period is complete, the Employee is entitled to 10 days off per year of which is required to be mutually benefiting of the Employer and the Employee. It is required

for the Employee to give notice before scheduling their vacation in accordance with Company policy.

**-Unused Vacation Time**. Any and all unused Vacation days shall be forfeited at the end of the year.

**IX. Personal Leave**. After the Trial Period, the Employee shall be eligible for 5 days of paid time off per year for personal and/or medical issues.If for any reason the Employee depletes their amount of days of Personal Leave in a given year, he or she may be able to use any remaining Vacation Time.

**-Unused Personal Leave**. Any and all unused Personal Leave days shall be forfeited at the end of the year.

**X. Holidays**. The Employee shall be required to appear only to Federal Holidays that are required by the Employer. This is subject to change by the Employer from time to time. If for any reason the Employee should request a holiday off, the Employer shall determine if the Employee may do so and if it shall be taken from either the Employee's Personal Leave or Vacation Time. Holidays are determined by the Employer and may change every calendar year.

**XI. Confidentiality**. The Employee understands and agrees to keep any and all information confidential regarding the business plans, inventions, designs, products, services, processes, trade secrets, copyrights, trademarks, customer information, customer lists, prices, analytics data, costs, affairs, and any other information that could be considered proprietary to the Employer ("Confidential Information"). The Employee understands that disclosure of any such Confidential Information, either directly or indirectly, shall result in litigation with the Employer eligible for equitable relief to the furthest extent of the law, including but not limited to, filing claims for losses and/or damages. In addition, if it is found that the Employee divulged Confidential Information to a third (3rd) party with the Employer shall be entitled any and all reimbursement for their legal and attorney's fees.

After the Employee has terminated their employment with the Employer, the Employee shall be bound to this Section of the Agreement for a period of 3 year(s).

**XII. Non-Compete**. During the term of employment, the Employee understands that he or she will be subject to learning proprietary information, including trade secrets, that could be applied to competitors of the employer. Therefore, in order to protect the fiduciary interests of the Employer, the Employee agrees to the following:

**-Industry(ies).** To withhold from working in the following industry(ies): related to social media talent management, unless approved.

**-Competitor(s).** To withhold from working for the following competitor(s): related to social media talent management, unless approved.

**-Term.** This Non-Compete shall be in effect for 2 year(s) following the date of Employee's termination.

**-Related Acts**. In addition, this Section shall be applied specifically to the Employee engaging, directly or indirectly, in the industry of the Employer. This includes but is not limited to: Communicating with related business owners, partners, members, officers, or agents; Being employed by or consulting any related business; Being self-employed in a related business; or Soliciting any customer, client, affiliate, vendor, or any other relationship of the Employer.

**XIII. Employee's Role**. The Employee shall not have the right to act in the capacity of the Employer. This includes, but is not limited to, making written or verbal agreements with any customer, client, affiliate, vendor, or third (3rd) party. These rights may or may not change at any time in the future by the Employer.

**XIV. Appearance**. The Employee must appear at the Employer's desired workplace at the time scheduled. If the Employee does not appear, for any reason, on more than 3 separate occasions in a 12-month calendar period the Employer has the right to terminate this Agreement immediately. In such event, the Employee would not be granted severance as stated in Section III.

**XV. Disability**. If for any reason the Employee cannot perform their duties, by physical or mental disability, the Employer may terminate this Agreement by giving the Employee 30 days' written notice.

**XVI. Compliance**. The Employee agrees to adhere to all sections of this Agreement in addition to any rules, regulations, or conduct standards of the Employer including obeying all local and federal laws. If the Employee does not adhere to this Agreement, company policies, including any task or obligation that is related to the responsibilities of their position, the Employer may terminate this Agreement without severance as stated in Section III.

**XVII. Return of Property**. The Employee agrees to return any and all property of the Employer upon the termination of employment. This includes, but is not limited to, equipment, electronics, records, access, notes, data, tests, vehicles, reports, models, or any property that is requested by the Employer.

**XVIII. Notices**. All notices that are to be sent under this Agreement shall be done in writing and to be delivered via Certified Mail (return receipt) to the following mailing addresses:

**Employer**

Influencer Narrative, LLC

WeWork c/o Influencer Narrative, 2700 Post Oak Blvd, Houston, Texas, 77056

**Employee**

Alexandra Davis

535 E 78th St, Apt 3D, New York, New York, 10075

The aforementioned addresses may be changed with the act of either party providing written notice.

**XIX. Amendments**. This Agreement may be modified or amended under the condition that any such amendment is attached and authorized by all parties.

**XX. Severability**. This Agreement shall remain in effect under the circumstance a section or provision is unenforceable or invalid. All remaining sections and provisions shall be deemed legally binding unless a court rules that any such provision or section is invalid or unenforceable, thus, limiting the effect of another provision or section. In such case, the affected provision or section shall be enforced as so limited.

**XXI. Waiver of Contractual Right**. If the Employer or Employee fails to enforce a provision or section of this Agreement, it shall not be determined as a waiver or limitation. Either party shall remain the right to enforce and compel the compliance of this Agreement to its fullest extent.

**XXII. Governing Law**. This Agreement shall be governed under the laws in the State of Texas and New York.

**XXIII. Entire Agreement**. This Agreement, along with any attachments or addendums, represents the entire agreement between the parties. Therefore, this Agreement supersedes any prior agreements, promises, conditions, or understandings between the Employer and Employee.

**EMPLOYER**

*Ted Raad* _____ Date __02/28/2020_____

Ted Raad

Title: CEO

**EMPLOYEE**

[DocuSigned by: /s/ signature — 4B93083D649442A] _____ Date __2/28/2020_____

Signature

Alexandra    Davis
_____

Print Name